41 So.3d 246 (2010)
Lucy THOMAS, Individually and as Personal Representative of the Estate of Mildred Thomas, Deceased, Appellant,
v.
The HOSPITAL BOARD OF DIRECTORS OF LEE COUNTY, d/b/a Lee Memorial Health Systems, Inc.; Kenneth W. Backstrand, M.D.; Kenneth W. Backstrand & Associates, M.D., P.A.; Clara Hughes, R.N.; Jeanie Smith, R.N.; Robert Arnall, M.D.; and Robert McCurdy, P.A., Appellees.
No. 2D08-1671.
District Court of Appeal of Florida, Second District.
May 7, 2010.
Rehearing Denied August 17, 2010.
*248 William deForest Thompson, Jr., of William deForest Thompson, Jr., P.A., Ft. Myers, for Appellant.
Richard R. Garland of Dickinson & Gibbons, P.A., Sarasota, and Douglas B. Lumpkin of Lumpkin & Haskins, P.A., Sarasota, for Appellees Hospital Board of Directors of Lee County, Clara Hughes, Jeanie Smith, Robert Arnall, and Robert McCurdy.
Mark Hicks, Dinah Stein, Brett C. Powell, and Irene Porter of Hicks, Porter, Ebenfeld & Stein, P.A., Miami; and Benito H. Diaz of Benito H. Diaz, P.A., Coral Gables, for Appellees Kenneth W. Backstrand, M.D., and Kenneth W. Backstrand & Associates, M.D., P.A.
MORRIS, Judge.
Lucy Thomas, individually and as personal representative of the estate of Mildred Thomas, appeals a partial final summary judgment entered in favor of the appellees, the Hospital Board of Directors of Lee County d/b/a as Lee Memorial Health Systems; Kenneth W. Backstrand, M.D.; Kenneth W. Backstrand & Associates, M.D., P.A.; Clara Hughes, R.N.; Jeanie Smith, R.N.; Robert Arnall, M.D.; and Robert McCurdy, P.A. She also appeals the dismissal of her claims for outrage (intentional infliction of emotional distress), mishandling of a dead body, and invasion of privacy, which were raised in prior versions of her complaint, as well as the trial court's order denying her motion for leave to amend the sixth amended complaint to add a claim under 42 U.S.C. § 1983 (1996). We conclude that the trial court erred by dismissing the claim for outrage and by entering the partial final summary judgment on the intentional misrepresentation claim. However, we affirm the dismissals of the claims for mishandling a dead body and invasion of privacy, and we dismiss the portion of the appeal dealing with the denial of Thomas's motion for leave to amend.

I. Background
On March 6, 1997, Mildred Thomas died at Lee Memorial Hospital after having hip surgery and going into cardiac arrest. Purportedly, following the surgery, Mildred Thomas's heartbeat and blood pressure increased, and Dr. Backstrand and Nurse Hughes injected Mildred Thomas with Esmolol which is commonly used to *249 treat those conditions. However, in doing so, they purportedly gave her a lethal overdose that ultimately led to her going into cardiac arrest. Subsequently, Dr. Backstrand, Nurse Hughes, and Nurse Smith purportedly agreed to conceal the real cause of Mildred Thomas's death and to instead notify her family that she died from the "stress of surgery." Dr. Backstrand, Nurse Hughes, and Nurse Smith listed that same cause of death in computer records, in the report to the medical examiner, and in discussions with other physicians. Dr. Arnall, Nurse Jackson, and Mr. McCurdy, the hospital attorney, later learned of Mildred Thomas's real cause of death through the hospital's incident reporting procedure, but they failed to disclose it.
Based on the report listing Mildred Thomas's cause of death as resulting from natural causes, the medical examiner did not conduct a complete autopsy and her body was released to her family for burial in Anniston, Alabama. On March 11, 1997, during Mildred Thomas's funeral, Lucy Thomas received a phone call from Mr. McCurdy and the medical examiner; the medical examiner demanded that Mildred Thomas's body be returned to him immediately for a second autopsy. This demand was made after the medical examiner learned of the real cause of Mildred Thomas's death. After Mildred Thomas's body was returned and the second autopsy conducted, the medical examiner attributed her death to Esmolol toxicity. Mildred Thomas was eventually laid to rest on March 15, 1997.
Thereafter, in 1998, Lucy Thomas filed her complaint alleging: (1) wrongful death by medical malpractice against both Dr. Backstrand and Lee Memorial Hospital; (2) breach of contract of care by Lee Memorial Hospital, Dr. Backstrand, and Nurse Hughes; (3) mishandling of a dead body; (4) outrage (intentional infliction of emotional distress); (5) invasion of privacy; and (6) intentional misrepresentation. In her claims for medical malpractice and breach of contract, Lucy Thomas sought damages for medical expenses, lost earnings or net accumulations, and lost support and services. Additionally, in all of the claims, she prayed for damages for funeral and burial expenses, mental and emotional pain and suffering, physical pain and suffering, lost support and services, and lost companionship, guidance, and advice (nonpecuniary damages).
The complaint was amended several times, but for purposes of this appeal, only the third amended complaint and the amended complaints which followed are relevant. After Lucy Thomas filed the third amended complaint, Lee Memorial Hospital and Dr. Backstrand moved to dismiss and strike various allegations of that third amended complaint for failure to comport with pleading rules and for failure to state a cause of action. In December 2000, the trial court entered an order dismissing the third amended complaint. Specifically, the trial court determined that while Lucy Thomas could amend the claims for medical malpractice and intentional misrepresentation, her claims of breach of contract, mishandling of a dead body, outrage (intentional infliction of emotional distress), and invasion of privacy failed to state a cause of action; those claims were dismissed with prejudice.
Lucy Thomas then filed a fourth amended complaint, this time alleging only three claims: two claims of medical malpractice and one claim of intentional misrepresentation and intentional infliction of emotional distress. Lucy Thomas made the same prayer for damages in the fourth amended complaint as she had in the prior complaints. Dr. Backstrand and Lee Memorial Hospital filed motions to dismiss and to *250 strike various allegations, including the prayers for damages for mental and emotional pain and suffering. They also filed motions for partial summary judgment arguing that Lucy Thomas could not recover damages for mental and emotional pain and suffering or lost companionship, guidance, and advice on the medical malpractice claims because all of Mildred Thomas's surviving children were adults who were precluded under section 768.21(8), Florida Statutes (1997), from seeking such damages in a wrongful death suit. The trial court then entered an order granting the motions to dismiss/strike in part and denying them in part. Specifically, the trial court struck the portions of the intentional misrepresentation claim which alleged intentional infliction of emotional distress on the basis that the court had previously dismissed the outrage claim with prejudice. And while the trial court dismissed the remaining portions of the intentional misrepresentation claim, it did so without prejudice so that Lucy Thomas could more adequately plead that claim. As to all of the claims, the trial court dismissed the prayer for damages relating to mental and emotional pain and suffering and lost companionship, guidance, and advice. In granting the motions for partial summary judgment on the medical malpractice claims, the trial court held that pursuant to section 768.21(8), Lucy Thomas could not recover nonpecuniary damages on behalf of the estate.
A fifth amended complaint soon followed. In that complaint, Lucy Thomas again alleged two counts of medical malpractice and one count of intentional misrepresentation. The intentional misrepresentation claim deleted some, but not all, of the allegations relating to intentional infliction of emotional distress. The fifth amended complaint also included a prayer for the same nonpecuniary damages which had been dismissed in the fourth amended complaint and which had been prohibited by the partial summary judgment. As with the prior amended complaints, Lee Memorial Hospital and Dr. Backstrand filed motions to dismiss or strike various allegations in the fifth amended complaint, arguing that Lucy Thomas was repleading allegations and prayers for damages which had already been dismissed or stricken. Although the trial court ultimately denied the motions to dismiss the claim for intentional misrepresentation, it granted the motions as to the prayer for nonpecuniary damages relating to that claim.
Lucy Thomas then moved to amend the fifth amended complaint to add a prayer for punitive damages and to add a claim for intentional infliction of emotional distress. The trial court granted the motion in part for Lucy Thomas to add a request for punitive damages but denied the motion regarding her request to add a claim for intentional infliction of emotional distress.
Thereafter, Lucy Thomas filed her sixth amended complaint, which asserted two counts of medical malpractice and one count of intentional misrepresentation. As part of her prayer for damages, she again asserted mental and emotional pain and suffering and lost companionship, guidance, and advice. And again, Lee Memorial Hospital and Dr. Backstrand filed motions to dismiss and strike various allegations. The trial court granted the motions in relevant part, dismissing the claims for nonpecuniary damages as they related to the medical malpractice claim against Lee Memorial Hospital only. The trial court denied the motions as they pertained to any of the allegations in the intentional misrepresentation claim.
In December 2004, Lee Memorial Hospital and Dr. Backstrand filed a motion for partial summary judgment, arguing that *251 Mildred Thomas's adult children were precluded from seeking damages for emotional injuries resulting from intentional misrepresentation because they had suffered no physical impact or injury.[1] They also argued that because similar claims had been dismissed in a case which had been brought by Mildred Thomas's other children[2] and because that dismissal was affirmed on appeal, Lucy Thomas's intentional misrepresentation claim should be dismissed on summary judgment. Dr. Backstrand also filed a separate motion for summary judgment, in which Lee Memorial Hospital later joined, arguing in relevant part that punitive damages were not warranted.
In February 2006, the trial court entered an order on the motions for partial summary judgment. In that order, the trial court denied summary judgment on the punitive damages issue but granted summary judgment on the issue of nonpecuniary damages on the basis that it had already stricken the nonpecuniary damages in prior orders.
After the case was set for trial, Lee Memorial Hospital and Dr. Backstrand filed a motion in limine, seeking in part to exclude evidence of mental and emotional pain and suffering and to preclude any claims for intentional infliction of emotional distress, outrage, and invasion of privacy, based upon the prior court orders. A pretrial hearing was held, and at that time, Lucy Thomas's counsel argued: (1) that the trial court should reconsider its rulings dismissing the nonpecuniary damages from the intentional misrepresentation claim and (2) that the impact rule did not apply to bar the nonpecuniary damages. Lucy Thomas's counsel conceded that the only damages she was seeking under the intentional misrepresentation claim were nonpecuniary in nature and that if the trial court determined that nonpecuniary damages were not available in that claim, then a directed verdict should be entered. Lee Memorial Hospital and Dr. Backstrand's counsel then moved for partial summary judgment on the intentional misrepresentation claim, and Lucy Thomas's counsel requested that a final summary judgment be entered on that claim so that she could pursue an appeal on that issue. Lucy Thomas's counsel also requested leave to amend the complaint to add a § 1983 claim, based on the deprivation of due process; she contended that the claim would be based on the same facts as the intentional misrepresentation claim. The trial court granted Lee Memorial Hospital and Dr. Backstrand's motion and entered partial final summary judgment on the claim for intentional misrepresentation. The trial court denied Lucy Thomas's motion for leave to amend.
In this appeal, the three issues have been framed as: the propriety of the partial final summary judgment on the intentional misrepresentation claim; the dismissal of the claims for outrage, mishandling of a dead body, and invasion of privacy; and the denial of the motion for leave to amend to add a § 1983 claim.

II. Appealability of the Order at Issue
Ordinarily, this court does not permit piecemeal appeals, such as where one, but not all, counts of a complaint have been dismissed. See SCI, Inc. v. Aneco Co., 410 So.2d 531, 532 (Fla. 2d DCA 1982). *252 However, that rule is generally applied where the claims are interrelated, involve the same transaction, and the same parties remain in the lawsuit. See id. In this case, although some of the same parties remain in the lawsuit, the claims for wrongful death are based on a completely different set of facts than the claim for intentional misrepresentation. Further, we note that the intentional misrepresentation claim was the sole remaining claim against Nurse Hughes, Nurse Smith, Dr. Arnall, and Mr. McCurdy. Thus, because the partial final summary judgment put an end to the judicial labor on the claim for intentional misrepresentation, and because no further claims remain as against Nurse Hughes, Nurse Smith, Dr. Arnall, and Mr. McCurdy, we construe the trial court's order to be a final appealable order. See City of St. Petersburg v. Circuit Court of the Sixth Judicial Circuit, 422 So.2d 18, 19 (Fla. 2d DCA 1982).

III. General Principles Regarding Summary Judgment
"A movant is entitled to summary judgment `if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Estate of Githens ex rel. Seaman v. Bon Secours-Maria Manor Nursing Care Ctr., Inc., 928 So.2d 1272, 1274 (Fla. 2d DCA 2006) (quoting Fla. R. Civ. P. 1.510(c)). The movant bears the burden of proving the nonexistence of genuine issues of material fact, and every possible inference must be viewed in favor of the party opposing summary judgment. Id. Even the slightest possibility of the existence of a genuine issue of material fact precludes the entry of final summary judgment. Nard, Inc. v. DeVito Contracting & Supply, Inc., 769 So.2d 1138, 1140 (Fla. 2d DCA 2000).
This court conducts a de novo review of a trial court's order granting partial final summary judgment. Roth v. Bank of Am., N.A., 23 So.3d 765, 766 (Fla. 2d DCA 2009).

IV. Neither Section 768.21(8) Nor the Impact Rule Applies to Bar Prayers for Nonpecuniary Damages in Claims for Intentional Misrepresentation.
In this case, the partial final summary judgment on the intentional misrepresentation claim appears to be based on two alternative grounds: (1) Lucy Thomas was precluded from seeking nonpecuniary damages in her capacity as a personal representative of the estate because Mildred Thomas's children were all adults and because the complaint arose only after Mildred Thomas died as a result of alleged medical malpractice, and (2) the claim failed to meet the requirements of the impact rule. Neither of these grounds support the trial court's decision.
First, we acknowledge that section 768.21(8) specifically prohibits adult children from recovering damages for mental and emotional pain and suffering and for loss of parental companionship, instruction, and guidance in wrongful death actions arising out of medical malpractice. Yet while Lucy Thomas's first two claims are wrongful death claims arising out of medical malpractice, the third claimthe one for intentional misrepresentationhas nothing to do with Mildred Thomas's purported wrongful death arising out of medical malpractice. Rather, the third claim is based on events which occurred after Mildred Thomas's demise, specifically, the purported cover-up of the real cause of her death and the provision of false information to her family. Thus, to the extent *253 that the trial court relied upon section 768.21(8) to enter partial final summary judgment, such reliance was erroneous.[3]
Second, the impact rule is not applicable to the claim for intentional misrepresentation. The impact rule essentially provides that in an action for simple negligence, there can be no recovery for mental or emotional pain and suffering unconnected with physical injury. See Rowell v. Holt, 850 So.2d 474, 477-78 (Fla. 2003); Gonzalez v. Metro. Dade County Pub. Health Trust, 651 So.2d 673, 675 (Fla.1995). The justification for such a rule is that "[a] cause of action for emotional distress involves special damages which are inherently difficult to ascertain and measure." Gonzalez, 651 So.2d at 675. However, that rule has not been extended to intentional tort cases "where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages." Kirksey v. Jernigan, 45 So.2d 188, 189 (Fla.1950); see also Rowell, 850 So.2d at 478 n. 1 (noting that intentional torts "have been deemed exclusions from . . . the impact rule"); Rivers v. Grimsley Oil Co., 842 So.2d 975, 976 (Fla. 2d DCA 2003) ("The impact [rule] has no application to intentional torts because the duties created by these torts have never been restricted to the protection of physical person and property.").
We have found one Florida case wherein the court rejected the application of the impact rule to bar a plaintiff's claim for fraud and deceit. In Food Fair, Inc. v. Anderson, 382 So.2d 150, 151 (Fla. 5th DCA 1980), the plaintiff's employer conducted an investigation after a cash shortage occurred. The security officer responsible for the investigation falsely told the plaintiff that if she did not admit to stealing certain amounts of money, she would be terminated from employment. Id. The plaintiff complied but was ultimately terminated anyway. Id. at 152. The plaintiff then filed a complaint based on intentional infliction of emotional distress and fraud and deceit. Id. While ultimately determining that the plaintiff's emotional distress was not foreseeable and therefore not sufficient to sustain a claim for intentional infliction of emotional distress, see id. at 154, the court did find that the claim for fraud was sufficiently pled despite the fact that the only damages were for the plaintiff's emotional distress, see id. at 155. In reaching that decision, the Fifth District noted that "[t]he injury sustained in an action for deceit must ordinarily be of a pecuniary nature," id. at 153, but the court held that the plaintiff's case was an exception to the impact rule because "the jury could have found malice of conduct which would support punitive damages," id. at 155.
We have also found a case with nearly identical facts to this case. In Szymanski v. Hartford Hospital, No. 363831, 1991 WL 16189, 3 Conn. L. Rptr. 747 (Conn.Super. Ct.1991), the plaintiffs brought a complaint based, in part, upon medical malpractice, intentional infliction of emotional *254 distress, and intentional misrepresentation after a hospital and its employees negligently rendered medical care, resulting in the death of the decedent. Subsequent to the death, the hospital and its employees then engaged in a purported cover-up and notified the family that the decedent died from natural causes despite knowing that such information was false. Id. at *1. In seeking to strike the claims for intentional infliction of emotional distress and intentional misrepresentation, the defendants argued that the plaintiffs' claims were merely an outgrowth of the medical malpractice claims and that they were seeking to recover "bystander emotional distress" damages[4] which are specifically barred by Connecticut law. Id. at *6. The court rejected this argument, noting that the intentional infliction of emotional distress and intentional misrepresentation claims related solely to the events occurring after the death: the purported cover-up and misrepresentation about what really happened. Id.
Similar to the Connecticut court's rejection of the "bystander emotional distress" rule in Szymanski, we reject the argument that Florida's impact rule bars Lucy Thomas's claim for intentional misrepresentation. The false statements concerning the cause of Mildred Thomas's death which were only discovered after her funeral services had already commenced and which necessitated the return of her body for a second autopsycertainly are equivalent to, if not more egregious, than the false statements made in Food Fair, Inc. We conclude that based on the specific facts of this case, a jury could find malice of conduct or, at the very least, a want of care of attention to duty or a great indifference to the rights of others which would support an award of punitive damages. Because the claim for intentional misrepresentation was one based on pure tort law rather than negligence, the impact rule was inapplicable. Accordingly, to the extent that the trial court entered partial final summary judgment on the basis of the impact rule, it erred.
We therefore reverse the partial final summary judgment on the claim for intentional misrepresentation and remand for further proceedings.

V. The Viability of the Claims for Outrage (Intentional Infliction of Emotional Distress), Mishandling of a Dead Body, and Invasion of Privacy.

A. Preservation.
We first address Lee Memorial Hospital and Dr. Backstrand's argument that Lucy Thomas abandoned her claims for outrage (intentional infliction of emotional distress), mishandling of a dead body, and invasion of privacy, based on Arthur v. Hillsborough County Board of Criminal Justice, 588 So.2d 236 (Fla. 2d DCA 1991). In that case, we held that "[i]t is a long established rule of law that an original pleading is superseded by an amended pleading which does not indicate an intention to preserve any portion of the original pleading." Id. at 237.
Here, after the trial court dismissed the mishandling of a dead body and invasion of *255 privacy claims in the third amended complaint, Lucy Thomas failed to reallege those claims in any of the subsequently amended complaints. And although Lucy Thomas did attempt to reallege the outrage (intentional infliction of emotional distress) claim in the fourth and fifth amended complaints, she failed to reallege it in the sixth amended complaint. Lucy Thomas also failed to indicate any intention to preserve any of the previously dismissed intentional tort claims in the sixth amended complaint.
Yet we do not believe that the rule espoused in Arthur is applicable to this case because the claims for outrage (intentional infliction of emotional distress), mishandling of a dead body, and invasion of privacy were dismissed with prejudice. Thus we do not find that Lucy Thomas abandoned those claims by failing to reallege them in her subsequently amended complaints.
We do, however, find that Lucy Thomas failed to preserve the issue of the dismissal of the claims for mishandling of a dead body and invasion of privacy because she failed to seek leave to amend those claims once they were dismissed with prejudice. See RHS Corp. v. City of Boynton Beach, 736 So.2d 1211, 1213 n. 2 (Fla. 4th DCA 1999) (noting that issue of dismissal of claim with prejudice was not preserved because record did not disclose that appellant ever requested leave to amend); Jelenc v. Draper, 678 So.2d 917, 918 n. 1 (Fla. 5th DCA 1996) (rejecting argument that dismissal of claim should have been without prejudice because appellants never requested opportunity to amend and holding therefore that issue was not preserved for appellate review).
In contrast, the record reveals that Lucy Thomas sought leave to amend the fifth amended complaint to add a claim for outrage (intentional infliction of emotional distress). We therefore deem the dismissal of that claim to be preserved for appellate review.

B. The Dismissal of the Outrage (Intentional Infliction of Emotional Distress) Claim Was a Necessary Interlocutory Step Leading to the Partial Final Summary Judgment and the Trial Court Erred by Dismissing It.
Lucy Thomas's claim for outrage (intentional infliction of emotional distress) was based on the same factual circumstances as the claim for intentional misrepresentation, given that she claimed the misrepresentations were "outrageous and would reasonably shock the conscience of any ordinary person in civilized society." Therefore, the entry of the partial final summary judgment on the intentional misrepresentation claim allows us to review the dismissal of the claim for outrage. See Saul v. Basse, 399 So.2d 130, 133 (Fla. 2d DCA 1981) (holding that an appeal of a final order "calls up for review all necessary interlocutory steps leading to that final order").
We review the dismissal of a claim for failure to state a cause of action under the de novo standard of review. See Wallace v. Dean, 3 So.3d 1035, 1045 (Fla.2009).
Turning to the merits, we note that in dismissing the outrage (intentional infliction of emotional distress) claim, the trial court cited Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277 (Fla.1985). Although the trial court did not provide a further explanation, its citation to McCarson leads us to believe that it determined that the appellees' conduct did not rise to the level of outrageous or extreme behavior which exceeded the bounds of decency. See id. at 279 (holding that insurance company's actions were not so outrageous in *256 character or extreme in degree as to go beyond the bounds of decency). We disagree.
In Liberty Mutual Insurance Co. v. Steadman, 968 So.2d 592, 594 (Fla. 2d DCA 2007), this court recited the elements of a claim for intentional infliction of emotional distress: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." Additionally, the conduct must be "`so outrageous in character, and so extreme in degree,'" that it is considered "`atrocious [] and utterly intolerable in a civilized community.'" Id. at 594-95 (quoting Ponton v. Scarfone, 468 So.2d 1009, 1011 (Fla. 2d DCA 1985)).
We hold that under the facts of this case, Lucy Thomas sufficiently pleaded the elements of a cause of action for outrage (intentional infliction of emotional distress) as defined above. We believe that the appellees' conduct in making false statementswhich led to the interruption of Mildred Thomas's funeral and the return of her body for a second, more thorough autopsyrises to the level of atrocious and utterly intolerable behavior which cannot be condoned in a civilized community. As noted in Steadman, when an actor has knowledge "`that the other [person] is peculiarly susceptible to emotional distress,'" the actor's "`conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge.'" 968 So.2d at 594 (quoting Restatement (Second) of Torts § 46 cmt. f (1965)). We believe that in a situation where a person's loved one has died, it would be apparent to anyone that the person would be susceptible to emotional distress and, therefore, that the action of providing false information concerning the loved one's cause of death meets the standard for a claim of outrage (intentional infliction of emotional distress). We therefore reverse the dismissal of the claim for outrage (intentional infliction of emotional distress), and we remand for further proceedings.

VI. The Order Denying Lucy Thomas's Motion for Leave to Amend is a Nonfinal and Nonappealable Order.
Finally, Lucy Thomas appeals the trial court's order denying her motion for leave to amend her complaint to add a § 1983 claim. However we dismiss this portion of the appeal because the order was nonfinal and nonappealable. See McHale v. Grobowsky, 913 So.2d 1292, 1292 (Fla. 2d DCA 2005) (dismissing portion of appeal addressing order which denied motion to amend complaint but reviewing second order which was a partial final judgment); Traveler v. Steiner Transocean Ltd., 895 So.2d 1191, 1192 (Fla. 3d DCA 2005) (dismissing appeal for lack of jurisdiction because order denying motion for leave to amend was nonfinal).[5]

VII. Conclusion
We hold that the trial court erred when it granted partial final summary judgment on the intentional misrepresentation claim and when it dismissed the claim for outrage (intentional infliction of emotional distress). However, we affirm the dismissal of the claims for mishandling of a dead body and invasion of privacy, and we dismiss the portion of the appeal addressing *257 the order denying the motion for leave to amend.
Affirmed in part, dismissed in part, reversed in part, and remanded.
KELLY and CRENSHAW, JJ., Concur.
NOTES
[1] The theory that a plaintiff cannot recover for mental distress damages absent a physical impact or injury is otherwise known as the impact rule. See Rowell v. Holt, 850 So.2d 474, 477-78 (Fla.2003).
[2] That case was consolidated below with Lucy Thomas's case for purposes of discovery and trial.
[3] See also Szymanski v. Hartford Hosp., No. 363831, 1991 WL 16189 at *6, 3 Conn. L. Rptr. 747 (Conn.Super.Ct.1991) (recognizing that plaintiff's claims for intentional infliction of emotional distress and intentional misrepresentation were separate and apart from wrongful death claims because they were based on hospital's alleged cover-up of and misrepresentations about the circumstances surrounding the death of the decedent and thus were based on events which occurred subsequent to decedent's death; court determined that statute requiring executor or administrator of estate to bring wrongful death action did not apply).
[4] "Bystander emotional distress" damages, as defined by Connecticut law, are damages for claims of a bystander's purported emotional distress arising after the bystander witnessed another person being threatened or injured as a result of someone's negligence. See, e.g., Maloney v. Conroy, 208 Conn. 392, 545 A.2d 1059 (1988). Florida courts, as an exception to the impact rule, permit bystanders to recover emotional distress damages only where a physical injury results from psychological trauma and only if certain other conditions have been met. See, e.g., Zell v. Meek, 665 So.2d 1048, 1054 (Fla. 1995); Watters v. Walgreen Co., 967 So.2d 930, 932 (Fla. 1st DCA 2007).
[5] Because we are reversing the partial final summary judgment on the intentional misrepresentation claim, our dismissal of the portion of the appeal addressing the denial of the motion to amend will likely be a moot issue. At the pretrial hearing, Lucy Thomas's counsel stated that the facts underlying the § 1983 claim were the same facts underlying the intentional misrepresentation claim.